J-A23037-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA,   :      IN THE SUPERIOR COURT OF
                                       :              PENNSYLVANIA

          Appellee          :

                                         :

             v.               :

                                       :

DAVID LYNN HEFLIN,             :

                                       :

          Appellant        :             No. 1700 WDA 2013

Appeal from the Judgment of Sentence entered on October 3, 2013
in the Court of Common Pleas of McKean County,
Criminal Division, No. CP-42-CR-0000221-2013

BEFORE:  DONOHUE, ALLEN and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:             **FILED SEPTEMBER 30, 2014**

David Lynn Heflin ("Heflin") appeals from the judgment of sentence imposed following his conviction of stalking.[1]  We affirm.

The trial court set forth the relevant factual and procedural history in its Opinion, which we incorporate herein by reference.  ***See*** Trial Court Opinion, 12/20/13, at 2-5.

On appeal, Heflin raises the following issues for our review:

1. Whether the trial court erred in denying [Heflin's] post[-]sentence [M]otion by finding that the evidence admitted at trial was sufficient to support a conviction for stalking?

2. Whether the [trial c]ourt's refusal to grant defense counsel's request for a continuance was an abuse of discretion and prejudicial to [Heflin] under the circumstances?

Brief for Appellant at 3.

---

[1] ***See*** 18 Pa.C.S.A. § 2709.1(a)(1).

In his first issue, Heflin contends that the trial court erroneously applied the Commonwealth's flawed reasoning that, because of his prior conviction for harassment of K. R. ("Victim"), he must have known that his advances upon Victim were unwanted and causing her distress. *Id*. at 12-14. Heflin argues that, in so doing, the trial court applied the *mens rea* of the crime of harassment (*i.e.*, intent to harass, annoy or alarm) to a stalking charge, rather than applying the heightened intent required for a stalking conviction (*i.e.*, intent to cause the victim substantial emotional distress). *Id*. at 14. Heflin asserts that a conviction for stalking cannot be upheld upon a showing of the intent required for harassment. *Id*. at 15. Heflin claims that knowledge that one is causing another substantial emotional distress, alone, does not support a finding of intent to cause another substantial emotional distress. *Id*. at 12, 16.

Heflin also points out that the trial court did not make a specific finding that he had the malevolent intent required for a stalking conviction. *Id*. at 16. Rather, Heflin contends, the trial court merely found that he should have known, and did know, that he was causing Victim distress, and nevertheless continued to contact her. *Id*. Heflin claims that these findings do not establish that he intended to cause Victim substantial emotional distress. *Id*. at 17.

Further, Heflin asserts that his actions do not suggest that he had the intent to cause Victim substantial emotional distress. *Id*. at 23. In support,

Heflin points out that he did not threaten, approach, call, or send Victim anything in the mail. *Id*. Heflin further points out that, although he made himself visible to Victim on several occasions, he remained at a distance, imploring her to talk to him. *Id*.

The trial court set forth the relevant law and addressed Heflin's first issue, concluding that it lacks merit. *See* Trial Court Opinion, 12/20/13, at 5-10. We agree with the sound reasoning of the trial court and affirm on this basis as to Heflin's first issue. *See id*.

Helfin's second issue on appeal was not raised in his Statement of Matters Complained of on Appeal. *See* Statement of Matters Complained of on Appeal, 11/4/13, at 1-3 (unnumbered). When an appellant is directed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), the appellant's concise statement must properly specify the error(s) to be addressed on appeal. *See* Pa.R.A.P. 1925(b)(4)(ii) (requiring that the concise statement "shall concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge"); Pa.R.A.P. 1925(b)(4)(vii) (stating that "[i]ssues not included in the Statement and/or not raised in accordance with the provisions of this [Rule] are waived"). Our review discloses that Heflin failed to raise the issue of whether the trial court erred by refusing to grant defense counsel's request for a continuance in his Statement. Therefore, it is waived.

- 3 -

Judgment of sentence affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/30/2014

COMMONWEALTH OF PENNSYLVANIA,

vs.

DAVID L. HEFLIN,

Defendant.

IN THE COURT OF COMMON PLEAS OF

McKEAN COUNTY, PENNSYLVANIA

CRIMINAL DIVISION

NO. 221 C.R. 2013

---

Philip L. Clabaugh, Esq.

Jay D. Carr, Esq.

for the Commonwealth

Counsel for the Defendant

---

Dated: December 20th, 2013

## RULE 1925(a) STATEMENT

The Defendant-Appellant appeals the Court's judgment of sentence issued on October 3, 2013, following a bench trial that was held before the Court on September 18, 2013. The Appellant was found guilty of and sentenced for one count Stalking,[1] a first degree misdemeanor. A timely Notice of Appeal was filed on October 21, 2013, which was followed by the Appellant's Statement of Errors Complained on Appeal filed on November 7, 2013. This Statement, written pursuant to Pa. R.A.P. 1925(a), is written to affirm this Court's imposition of sentence and finding of guilt following said bench trial.

In this appeal the Appellant asserts that the record is devoid of any evidence that he intended to cause the victim, Karen Rounsville, emotional distress. Of course, in evaluating a challenge to the sufficiency of the evidence on appeal from a criminal conviction, the Superior Court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond

---

[1] 18 Pa. C.S.A. §2709.1(a)(1)

1

a reasonable doubt. Commonwealth v. Lee, 956 A.2d 1024, 1028 (Pa. Super. 2008). With that standard in mind the Court sets forth the following factual background:

## FACTUAL BACKGROUND:

The Appellant and the Ms. Rounsville first met approximately thirty years prior to April 14, 2013, when they each worked for the Bradford Redevelopment Authority. They were never involved in a relationship. They were acquaintances and would sometimes speak at work. After Ms. Rounsville left her job at the Bradford Authority about 25 years ago she and the Appellant had no contact at all until the winter of 2012 when she when she ran into the Appellant while shopping at the Tops Supermarket in Bradford. The two spoke briefly. After that Ms. Rounsville would see the Appellant while shopping at Tops occasionally. The Appellant would seek out Ms. Rounsville to speak with her. At first Ms. Rounsville, although somewhat annoyed, would listen to the Appellant and converse with him. However, she became very concerned when, after several of these unplanned meetings at Tops, the Appellant sent her flowers (to her place of employment at the Bradford Welfare Office). At that point Ms. Rounsville told the Appellant that she was not interested in having a relationship with him and that she didn't want him to send her anymore flowers, etc. Further, she sent him a letter "Q: Did you make it clear you didn't want contact? A: Yes, I did, on several occasions. I even wrote him a letter imploring him to stay away from me, and I have the return receipt request so that I knew he got it. When he was parked beside my vehicle when I would go out from work or come into work, I begged him to stay away. I begged him to quit sending me flowers, I repeatedly asked him to stay out of my face." September 18, 2013, Transcript page 20. When the Appellant continued to attempt to

2

communicate with her and send her flowers, Ms. Rounsville contacted the Bradford City Police Department. The Appellant was ultimately charged with summary harassment and found guilty by Magisterial District Judge Dominic Cercone in the spring of 2011. Of course, Ms. Rounsville was hopeful that this summary conviction would get the message to the Appellant that she absolutely did not want to have any further contact with him and his attempts to contact her would stop. That did not happen.

On February 14, 2013, Valentine's Day, approximately one year after the Appellant was found guilty of harassing the victim, he again attempted to communicate with Ms. Rounsville. The Appellant parked at a convenience store in which the victim was purchasing coffee. As she exited, the Appellant drove in front of her, slowed, and glared at her as she walked to her nearby office. A week later, Ms. Rounsville noticed the Appellant's truck parked in the hotel parking lot directly opposite her office. The Appellant would often times follow Ms. Rounsville as she ran errands during her lunch break, and he would repeatedly reach intersections so that his truck would cut her off from driving. This conduct continued for approximately two to three weeks. Upon leaving work one evening, Ms. Rounsville once again spotted the Appellant in the parking lot across from her office kneeling beside his truck in a praying position. On March 1, 2013, the Appellant placed a large white sign in front of the victim's parking space at work. The sign read, "Mi Amor, You cause me great emotional distress. Please talk to me. I don't want to be somebody you use to know." Ms. Rounsville did not see the sign that day but was advised by co-workers that it had been placed there. September 18, 2013, Transcript page 19. The placement of the sign and previous conduct toward her caused her extreme emotional distress and fear. "Q: And over this two to three-week period of time from Valentine's Day to March 1st, how did this continued contact, how did it make you feel?" "A: Very unnerved, constantly

3

looking over my shoulder, just afraid to go on my runs at night or my bike rides, just wondering, you know, is he going to show up somewhere, just never knowing what to expect next, just very unnerving." September 18, 2013, Transcript page 16. She had previously relayed her concerns to her employer and, in an attempt to limit the Defendant's opportunity to have contact with her, she was permitted to park her vehicle directly next to the front door of her employer's office complex. Further, she was so upset from the sign incident that she left work and remained home from work that day.

The Appellant did not deny that he placed the sign for the victim at her place of employment or that he had parked across from her placement of employment, etc. as described above. He told Lieutenant Steven Caskey of the Bradford City Police Department that Ms. Rounsville had driven by him on several occasions including smiling and waving. September 18, 2013, Transcript page 36. He asserted that he "... was going to head her off and make her talk to him." September 18, 2013, Transcript page 37. The Appellant ". . . felt because she was driving slowly that she wanted him to follow." September 18, 2013, Transcript page 37. Lieutenant Caskey testified that the Appellant told him that: "[h]er place of employment is located on Chestnut Street and she drove past the entrance to her place of employment, and again, he took that as she wanted him to follow. They drove around several blocks and then he proceeded to just drive away." September 18, 2013, Transcript page 37. "He (Appellant) then told me (Lieutenant Caskey) he went away for a few days and when he came back he parked across the street in the Best Western parking lot, got out and stood beside his vehicle. He thought that she would see him and when that didn't happen, he put his banner up on the fence." September 18, 2013, Transcript page 38. The Appellants defense was and is basically that he did undertake the physical acts of following Ms. Rounsville, etc., but, because he had no malicious

4

intent, he cannot be guilty of the offense of Stalking,[2] a first degree misdemeanor. To evidence his mindset that he deeply cared for Ms. Rounsville, the Appellant called his neighbor, Joseph H. Yaros as a witness at trial. Mr. Yros testified that the Appellant told him "that he cared about her." September 18, 2013, Transcript page 43.

The Appellant was sentenced on October 3, 2013, to, *inter alia,* incarceration in the McKean County Jail of not less than sixty days to no more than eighteen months. The Appellant filed a timely post-sentence motion in which he asserted that the evidence was insufficient to sustain the Court's verdict. By Order dated October 11, 2013, the Court denied the post-sentence motion based upon the reasoning stated at the conclusion of the trial. This appeal followed.

## DISCUSSION:

The Defendant argues that the record is devoid of any evidence that the Appellant intended to cause Ms. Rounsville emotional distress by driving near her, placing a sign for her, and parking across from her place of employment. The Commonwealth argued at trial that the Appellant's *mens rea* could be inferred from his repeated actions in light of all circumstances in this case.

The facts and circumstances established by the Commonwealth need not be absolutely incompatible with the defendant's innocence, but the question of any doubt is for the factfinder unless the evidence be so weak and inconclusive that as a matter of law no probability of fact can be drawn from the combined circumstances. Commonwealth v. Baker, 24 A.3d 1006, 1019 (Pa. Super. 2011) (internal citation references omitted).

---

[2] 18 Pa. C.S.A. §2709.1(a)(1)

5

"A person commits the crime of stalking when the person...(1) engages in a course of conduct or repeatedly commits acts toward another person, including following the person without proper authority, under circumstances which demonstrate either an intent to place such other person in reasonable fear of bodily injury or to cause substantial emotional distress to such other person..." 18 Pa. C.S.A. §2709.1(a)(1). In this case the Appellant followed the victim in public, left her a sign expressing his strong desire to have contact with her, both after he was repeatedly told by the victim she wanted no contact with him and after he had already been convicted of the summary offense of Summary Harassment for previous contact with her. What better notice is there that someone does not want to have contact with you then a previous summary conviction for having contact with them? The Appellant's contact was not isolated, it was repeated. The statute defines "course of conduct" as "[a] pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct."[3] The Appellant's actions were not confined to a single, isolated incident. Not only did the Appellant follow the victim, but the Court found that he intentionally took action to bring about contact – it wasn't random. For example, Lieutenant Steve Caskey of the Bradford City Police testified that he interviewed the Appellant following the March 1, 2013, incident of placing the sign at the victim's workplace. The Appellant told Lt. Caskey that he would follow the victim in his truck because he thought she wanted him to follow her. Lt. Caskey testified that the Appellant stated that "...[Ms. Rounsville] was driving slowly, he didn't know whether to follow or stay in the TOPS lot, but he felt because she was driving slowly that she wanted him to follow." (Hearing Transcript, September 18, 2013, Page 37, Lines 10-13). The Appellant admitted that he followed the victim in his vehicle. He further admitted that he would wait in the hotel parking lot so that the victim would notice him.

---

[3] Section 2709.1(f)

6

Again, the Appellant's doesn't dispute that he had and intended to have contact with Ms. Rounsville – but that he thought she welcomed this contact. In Commonwealth v. D'Collanfield, 805 A.2d 1244 (Pa. Super. 2002) the Superior Court held that that, in a Stalking case, a defendant's intent to place a victim in emotional distress may be inferred from his or her actions. Further, "[w]e have held consistently that intent may be inferred from the words or actions of the defendant in light of all attendant circumstances." Id. at 1249, citing Commonwealth v. Pasley, 743 A.2d 521 (Pa. Super. 1999). More recently, the Pennsylvania Superior Court held: "[a]n intent to harass may be inferred from the totality of the circumstances." Commonwealth v. Cox, 72 A.3d 719, 721 (Pa.Super. 2013). In Commonwealth v. Miller, 698 A.2d 238 (Pa.Super. 1997), a defendant also raised the assertion that the elements of Stalking could not be demonstrated because: 1) he had no evil intent to harass or alarm the victim; 2) he was merely in the same physical area of the victim and had not threatened her; and, 3) the victim's expression of feeling "uneasy" was insufficient to meet the emotional harm and distress required under the statute. The Superior Court's holding is worth citing at length:

> Appellant maintains that, although he was in close proximity to Ms. McDonald four times within one afternoon, intent to harass, annoy, alarm, cause reasonable fear of bodily injury or substantial emotional distress cannot be inferred. This argument is purportedly supported by the fact that appellant offered innocuous explanations for his actions on the day in question, that there was no actual or attempted bodily harm caused and that the victim did not testify that she suffered severe emotional distress as a result of the altercations.
>
> Addressing the initial averment, that appellant provided benign explanations for why he was in the same area as the victim on the date in question, we find that this in no way obviates a finding that appellant possessed the requisite criminal intent. Indeed, this proffer runs contrary to the very standard of review that this Court must utilize in assessing appellant's claim; for in finding that appellant acted with the necessary intent, the trial judge must have concluded that appellant's narration was baseless.

7

Next, appellant claims that the *mens rea* element was not proven because at no time was there actual physical harm or the threat thereof. This argument is ludicrous. An intent to place one in fear of bodily injury is but one *mens rea* that will sustain a conviction under § 2709(a) and (b). Alternatively, a conviction may be upheld upon a showing that the accused intended to harass, annoy, alarm or cause substantial emotional distress. Therefore, we find the fact that appellant did not attempt to approach or physically harm the victim to be of no consequence.

Finally, appellant claims that his lack of intent may be gleaned from the testimony of the victim that she had an "uneasy feeling" about the events in question. Even accepting as true that the victim's distress was not severe, we are unpersuaded that this precludes a finding that appellant's intent was to cause such a reaction. We are aware of no caselaw which holds that the extent of a person's intent may be measured from the ultimate effect upon the victim. Furthermore, as previously stated, the intent to annoy, harass or alarm will also serve to sustain a conviction under § 2709.

Commonwealth v. Miller, 689 A.2d 238, 240-241 (Pa.Super. 1997).

Like the defendant in Miller, the Appellant here had ample notice that his repeated actions of following the victim, staring at her, being outside where she shopped and worked, hanging up his expression of love and desire, would cause substantial emotional distress to Ms. Rounsville. He knew that because he was previously convicted of harassing her and she had repeatedly told him, including a certified letter, to stay away from her. He may not have wanted to accept it, but the message was loud and clear to him that he was causing great stress to Ms. Rounsville and she absolutely wanted nothing to do with him. The Appellant should not be able to now hide behind his own self-made refusal to accept reality. Further, the Court finds the Appellant's assertions of ignorance of Ms. Rounsville's emotional distress and feelings incredible. The Appellants told Lieutenant Caskey that he was "going to head her (Ms. Rounsville) off and make her talk to him." September 18, 2013 Transcript page 37. This

8

statement reflects that the Appellant knew Ms. Rousville did not want to have contact with him and this time he, again, was "going to make her talk." You don't make someone talk to you if they already wanted too – you make them talk to you if they didn't want too. Appellant's course of conduct was the type that was composed of more than one act. He clearly followed Ms. Rounsville without her authority to do so. Moreover, it was his custom to wait in the hotel parking lot so that she would see him. This he knew would catch her attention because the parking lot is directly opposite her place of employment. Finally, the Appellant was so familiar with the victim's habits that he knew which parking spot she utilized at work. It was in front of this spot at which he placed a large, white sign pleading for her to talk to him.

There is also sufficient evidence to demonstrate that the Appellant engaged in the prohibited course of conduct as defined by the statute; and, that this conduct caused sufficient emotional distress to Ms. Rounsville to support a conviction. The Commonwealth presented evidence that the victim felt alarm and distress from the Appellant's actions. On the day the Appellant placed the sign at her workplace, Ms. Rounsville testified that she was shaken up. When asked by the Commonwealth what actions prompted her to feel shaken up, she responded, "[t]he whole deal, everything, and then…you think for one minute maybe it's over and then all of a sudden something like this crops up. Again, just never knowing from one minute to the next what to expect, and when I heard what the verbiage on…[the sign]…said, I just couldn't believe it." (Hearing Transcript, September 18, 2013, Page 15, Lines 20-25). The Appellant's conduct, which has been ongoing for years but culminated over the relevant two week period here, impacted the daily routines of the victim. She testified that the Appellant's actions forced her to change her routine. When asked by the Commonwealth how the continued contact made her feel, she responded, "[v]ery unnerved, constantly looking over my shoulder, just afraid to go on

9

my runs at night or my bike rides, just wondering, you know, is he going to show up somewhere, just never knowing what to expect next, just very unnerving." (Id. at Page 16, Lines 10-14). Again, the Appellant was aware that Ms. Rounsville did not welcome his attempts at communication, to the point where she explicitly told him stay away.

Accordingly, for the reasons expressed in this Statement, the Court's Order dated October 3, 2013, should be affirmed as the sentence was founded upon a guilty verdict for which there was presented sufficient evidence that the Appellant, by his course of continuing conduct, placed the victim in substantial emotional distress.

RESPECTFULLY SUBMITTED:

_____
JOHN H. PAVLOCK, P.J.

C: DA
g Caw
( 12/23/13 )

2013 DEC 20 PH 2: 09

10